## THE HARRY BUSCHMAN.[1]

### TER REEHORST v. THE HARRY BUSCHMAN.

*(District Court, S. D. New York. January 16, 1888.)*

1. NEGLIGENCE—SEAMEN—INJURY WHILE ON DUTY—HEAVY SEA.
    Libelant, while at the wheel of the bark B., as the vessel was running before a gale of wind, was thrown over the wheel through the effect of a heavy sea striking the rudder; and, his wrist being thereby broken, he brought suit for the injury. No faulty construction of the wheel being proved, or negligence on the part of the ship established, *held*, that the vessel was not liable.

2. SEAMEN—INJURIES TO—RIGHT TO HOSPITAL TREATMENT—DUTY TO PUT ON SHORE.
    Libelant was injured while on a voyage from New York to Spain. He testified that, on arrival in a port of Spain, he insisted upon hospital treatment there, which the master refused. The master testified that libelant had preferred to return with the vessel to New York. His injury was a peculiar one; the result of the skillful treatment he received at the Long Island hospital was so excellent as to render it doubtful whether it would have been better for him to have been left in a Spanish hospital. *Held*, on the evidence, that libelant could not recover.

In Admiralty. Libel by Charles Peter ter Reehorst to recover damages for personal injuries received as a seaman on board the Harry Buschman.

*Shepard & Osborne*, for libelant.

*Wing, Shoudy & Putnam*, for claimants.

BROWN, J. The libelant shipped as an able seaman on the bark Harry Buschman for a voyage from New York to Spain. The ship sailed from

[1] Reported by Edward G. Benedict, Esq., of the New York bar.

New York on the eighteenth of January, 1887. On the fourth day out, at about 8 o'clock in the morning, while the libelant was at the wheel, the ship running before the wind in a gale, a heavy overtaking sea struck the rudder and caused the libelant to be thrown over the wheel, whereby the radius of his fore-arm was broken about an inch from the the wrist joint. The fracture was what is known in surgery as the "Collis Fracture,"—a difficult one to treat, and until comparatively recent times often confounded with dislocation of the wrist. The master did not think the wrist was broken; it was bandaged and treated by him as well as he knew how. The radius was, however, completely broken, and the main portion overlapped the other part at the wrist, turning the hand somewhat forward and outward, so as to lessen by one-half, or more, the power to rotate the arm, or to close the hand; thus resulting in a permanent partial disability. The vessel arrived at Pasages, Spain, about 40 days after the accident, and at Bilboa in about 55 days. The master testifies that at both places he made several inquires in regard to hospital accommodations; the result of which was that there was none at which it was desirable that the libelant should go for treatment of such a fracture, and after such a length of time. A Spanish surgeon was procured at Pasages, who visited the libelant twice on board the ship, and prescribed for him. The libelant testifies that he insisted upon being left at some hospital at or near Pasages, or at Bilboa, or that he be sent by steamer to London for treatment, and that the Spanish surgeon advised that he should go at once to the hospital. The master, on the contrary, denies any such recommendation of the surgeon, or that the libelant insisted upon going to the hospital. He testifies that he told the libelant of his various inquiries, and of the results; that he would leave him, if he insisted on it; but recommended his remaining on board the ship; and the libelant finally acquiesced in that, as the best thing he could do. On arrival at New York, about 100 days after the accident, the libelant was paid his wages in full, and was sent to the Long Island hospital, where he remained about three months at the ship's expense. By skillful treatment the malattachments during this long interval were ruptured, and the radius brought back nearly into place, with a resulting success very rare in such cases; but the rotation of the arm and the prehensile power of the hand are still such as to disable the libelant permanently for the duties of an able seaman. The libelant claims damages—*First*, because the accident itself, as he alleges, was caused by the slackness of the ropes at the wheel; and, *second*, for not giving him hospital treatment earlier, and in the mean time requiring of him work for which he was unfit.

As respects the cause of the accident, I cannot find from the testimony that the libelant establishes negligence in the ship. The evidence shows that the wheel-ropes ought not to be kept perfectly tight, and that the slackness is constantly varying from different causes. The mate testifies that the ropes were in a proper condition; and that even if they were more slack than usual that circumstance instead of increasing the danger to the wheelsman, through seas striking the rudder, would diminish the

danger; and that not five minutes before the accident he had given special cautions to the libelant; and that the ropes were not tightened, as the libelant alleges, until several days afterwards. The master testifies that he was carrying all the sail that was prudent; and it is not admissible to substitute the libelant's judgment, unsupported by other testimony, that more sail might have been carried, so as to lessen materially the effects of overtaking seas. Such seas are always attended with some danger to the helmsman, unless constant attention and caution are used. The mate's caution to the libelant had evident reference to the known necessity of careful attention. There is no such preponderance of proof as to satisfy me that the slackness of the ropes was the proximate cause of the accident.

As respects treatment, had the libelant insisted upon being sent to a hospital in Spain, the master was doubtless legally bound to give him the benefit of immediate hospital treatment, or take upon himself the burden of proving the unfitness of the hospital, or that the libelant has sustained no additional damage from the want of it. The libelant testifies that he insisted repeatedly, and very earnestly, on being sent to the hospital; and only returned with the ship because the master would not permit him to go ashore. The master's testimony is quite as explicit to the contrary, and it is, to some extent, sustained by the mate. It is unfortunate that the libelant has no one to corroborate any part of his testimony. There can be no doubt that there was considerable discussion as to what was best to be done. And it seems improbable that, if he were as explicit as he now affirms, none of his shipmates should have been either aware of it, or called to support him. And even now, considering the length of time that had then elapsed since the accident, the special skill necessary in the treatment of such a case, and the fact more than half the cases of "Collis fractures," when treated at once, instead of after a lapse of 40 days, do not result in perfect cures, it is doubtful whether the final result would have been better had he been left at one of the Spanish hospitals. The medical experts say that even had the wrist been treated in the best manner at once on arrival at Pasages, that is, 40 days after the fracture, it is not probable that it would have been sufficiently restored for the libelant to continue an able seaman. The allegation of improper work imposed on the libelant I do not think sustained. In every aspect of the case, there remains too much of doubt, and a failure of the necessary preponderating proof on the libelant's part to authorize me to charge the ship with fault. I am therefore obliged to dismiss the libel, but it must be without costs.